El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
Debemos analizar si se le delegó a la Junta de Reestruc-turación y Estabilización Fiscal (JREF) la facultad de es-tablecer una fecha en corte para computar la antigüedad de los empleados públicos afectados por la Ley Núm. 7-2009, mejor conocida como Ley Especial Declarando Es-tado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico, 3 L.P.R.A. sec. 8791 et seq. Contestamos en la afirmativa. Por los fundamentos que exponemos a conti- *99 nuación, revocamos los dictámenes del Tribunal de Apelaciones.
I — I
En aras de preservar la fluidez del análisis, narraremos los hechos de cada uno de los tres casos consolidados por separado.

CC-2010-1005

La Sra. Milagros Sánchez Collazo ocupaba el puesto de subdirectora de monitoria de calidad de servicios en el De-partamento de la Vivienda. El 21 de abril de 2009, el De-partamento de la Vivienda le entregó a la señora Sánchez Collazo una certificación de fecha de antigüedad en la agencia, en la que indicó que su fecha de ingreso al servicio público fue el 11 de noviembre de 1994 y que su antigüedad total era de cinco años, cuatro meses y tres días. El 7 de mayo de 2009, la señora Sánchez Collazo presentó ante la autoridad nominadora el “Formulario de Impugnación de Fecha de Antigüedad” conjuntamente con prueba docu-mental que demostró que su antigüedad fue calculada incorrectamente.
Luego de ciertos trámites, el 1 de julio de 2009, el De-partamento de la Vivienda le remitió a la señora Sánchez Collazo una certificación final de fecha de antigüedad. En ella, se le indicó a la señora Sánchez Collazo que al 17 de abril de 2009 la suma de todos los períodos trabajados en el servicio público, según estableció la Ley Núm. 7, supra, totalizaban doce años, once meses y diecinueve días. Pos-teriormente, el 28 de septiembre de 2009, el Departamento de la Vivienda le notificó a la señora Sánchez Collazo que, efectivo el 6 de noviembre de 2009, sería cesanteada de su puesto de trabajo en anuencia con la Ley Núm. 7, supra.
Inconforme con esa determinación, la señora Sánchez Collazo presentó una apelación por derecho propio ante la Comisión Apelativa del Sistema de Administración de Re- *100 cursos Humanos del Servicio Público (CASARH). Allí alegó que ocupaba un puesto de carrera en el Departamento de la Vivienda y que, al momento de ser efectiva su cesantía, su antigüedad en el servicio público era de trece años, seis meses y veintidós días. El Departamento de la Vivienda contestó la apelación y solicitó su desestimación. La señora Sánchez Collazo se opuso y argumentó que su cesantía ha-bía sido contraria a derecho porque no se utilizó exclusiva-mente el criterio de antigüedad. Además, alegó que la an-tigüedad debía computarse desde que comenzó a trabajar en el servicio público hasta el día en que cesaría en sus funciones, es decir, hasta el 6 de noviembre de 2009.
El 2 de noviembre de 2009, la JREF emitió la Carta Circular Núm. 2009-16 en la que estableció una antigüe-dad fija que se utilizaría para decretar las cesantías. Véase el portal interactivo de la JREF: (http://www.jrefpr.com/), última visita, 30 de agosto de 2011. En la Carta Circular Núm. 2009-16 la JREF estableció como fecha de corte de antigüedad para todos los empleados públicos el 17 de abril de 2009.
El 10 de febrero de 2010, el Departamento de la Vi-vienda presentó ante la CASARH una solicitud de desesti-mación de la apelación a la cual se opuso la señora Sánchez Collazo. En esa oposición, la señora Sánchez Collazo señaló que la Ley Núm. 7, supra, no estableció que para el cóm-puto de la antigüedad se tomara en consideración sola-mente el tiempo trabajado hasta el 17 de abril de 2009.
El 25 de febrero de 2010, la señora Sánchez Collazo pre-sentó una apelación enmendada. En esa misma fecha se celebró una vista ante la CASARH para dilucidar el estado de los procedimientos. Mediante Minuta y Orden de 25 de febrero de 2010, CASARH hizo constar que la señora Sán-chez Collazo había aceptado que la certificación final de antigüedad notificada era correcta, por lo que para propó-sitos de la Ley Núm. 7, supra, ésta contaba con doce años, once meses y diecinueve días de antigüedad.
*101 Posteriormente, el 4 de marzo de 2010, la señora Sán-chez Collazo presentó ante la CASARH una moción en cumplimiento de orden, acompañada de sus certificaciones de antigüedad. Solicitó nuevamente que se computara su antigüedad hasta su último día de trabajo, y no mera-mente hasta el 17 de abril de 2009. El 5 de marzo de 2010 el Departamento de la Vivienda presentó ante la CASARH una resolución sumaria en la cual solicitó el archivo de la apelación. Argumentó que no existía controversia de he-chos y que la controversia planteada era de derecho.
Mediante Resolución de 30 de marzo de 2010, la CA-SARH emitió una Resolución en la que archivó la apelación presentada por la señora Sánchez Collazo. Concluyó que la señora Sánchez Collazo poseía un total de doce años, once meses y diecinueve días de antigüedad en el servicio pú-blico, lo que implicaba que ésta no cumplía con el mínimo de antigüedad requerido por la Carta Circular 2009-16. El 5 de mayo de 2010, la recurrente solicitó la reconsidera-ción, aunque fue denegada.
Inconforme, la señora Sánchez Collazo presentó un re-curso de revisión judicial ante el Tribunal de Apelaciones. En esencia, sostuvo que la CASARH erró al archivar la apelación sin dilucidar la alegación de que se debe compu-tar su antigüedad hasta el último día de empleo y no hasta el 17 de abril de 2009. Por consiguiente, indicó que se le debía permitir presentar evidencia sobre la antigüedad que tenía hasta la fecha de su cesantía el 6 de noviembre de 2009.
El 29 de octubre de 2010, una mayoría del panel de jueces del Tribunal de Apelaciones (Hons. Ramírez Nazario y Piñero González) revocó la decisión de la CASARH y con-cluyó que
... al momento de entrar en vigor la cesantía de la señora Sánchez [Collazo], el 6 de noviembre de 2009, ésta contaba con trece (13) años seis (6) meses y veintidós (22) días en el servi-cio público. Es decir, que a la fecha de su cesantía la señora *102 Sánchez [Collazo] tenía una antigüedad real en el servicio pú-blico que le permitía quedar exenta del plan de cesantías.
De lo anterior se desprende que aunque la recurrente [señora Sánchez Collazo] se mantuvo prestando servicios en el Departamento [de la Vivienda] desde el 17 de abril de 2009 hasta el 6 de noviembre del mismo año, fecha en que fue efec-tiva su cesantía, de conformidad con la Carta Normativa de [la] JREF del 2 de noviembre de 2009, ese periodo no se con-tabilizó para computar su verdadera antigüedad, por lo que dicho organismo en términos reales declaró “inexistente” dicho periodo que fue realmente trabajado por la señora Sánchez [Collazo]. Si bien la Ley Núm. 7, supra, le confirió facultad a[la] JREF para instrumentar el plan de cesantías, dicho mandato legislativo estableció expresamente que el mismo de-bía ponerse en vigor de conformidad con el criterio de antigüedad. (Enfasis suprimido.) Apéndice, Caso Núm. CC-2010-1005, págs. 15-16.
En otras palabras, una mayoría del panel del foro ape-lativo intermedio entendió que a la JREF no se le otorgó la facultad de establecer una fecha de corte para computar la antigüedad de los empleados públicos. El Juez Figueroa Cabán emitió un voto disidente en el que expresó que
[s]i la JREF no tiene facultad de establecer la fecha límite de vigencia de un despido, la delegación de poder se converti-ría en un ejercicio fútil e inconsecuente. Dicha conducta no sería consistente ni con las declaraciones del legislador en la Exposición de Motivos de la Ley Núm. 7, ni con los principios básicos de hermenéutica que reconocen que los actos legislati-vos tienen que estar animados hacia la consecución de un pro-pósito determinado. Apéndice, Caso Núm. CC-2010-1005, pág. 24.
Inconforme con la decisión del Tribunal de Apelaciones, el Estado presentó un recurso de certiorari ante nos. En él, solicita que se revoque la sentencia emitida por el Tribunal de Apelaciones. Sostiene que el legislador, por virtud de la Ley Núm. 7, supra, delegó a la JREF la facultad de esta-blecer una fecha de corte para computar la antigüedad de los empleados públicos. El 24 de noviembre de 2010 emiti-mos una Resolución en auxilio de nuestra jurisdicción en la que paralizamos los efectos de la sentencia emitida por el *103 Tribunal de Apelaciones y ordenamos a la señora Sánchez Collazo que en treinta días mostrara causa por la cual no se debía expedir el auto de certiorari y revocar la sentencia del Tribunal de Apelaciones.

CC-2011-260

El 18 de junio de 2009 el Departamento de Corrección y Rehabilitación le notificó a la Sra. Diana Malbert Cande-lario la determinación final respecto a su antigüedad en la agencia. Se le indicó que su antigüedad total al 17 de abril de 2009 era de trece años, dos meses y veintidós días.
El 26 de febrero de 2010, el Departamento de Corrección le notificó a la señora Malbert Candelario que efectivo el 5 de abril de 2010 sería cesanteada de su puesto en confor-midad con la Ley Núm. 7, supra.
Inconforme con la determinación del Departamento de Corrección y Rehabilitación, la señora Malbert Candelario presentó el 2 de octubre de 2009 una querella ante la Co-misión de Relaciones del Trabajo del Servicio Público. Alegó que al momento de efectividad de la cesantía, su an-tigüedad en el servicio público era de catorce años, un mes y veintisiete días. Además, argumentó que su cesantía era contraria a derecho, porque no se utilizó exclusivamente el criterio de antigüedad. Planteó que la antigüedad debía computarse desde que comenzó a trabajar en el servicio público hasta el día en que cesaría en sus funciones, es decir, hasta el 5 de abril de 2010.
El 6 de mayo de 2010 se celebró una vista de arbitraje ante la Comisión de Relaciones del Trabajo del Servicio Público. Mediante un laudo de 19 de mayo de 2010 una árbitro concluyó que era correcta la certificación de anti-güedad emitida por el Departamento de Corrección al 17 de abril de 2009 y que, por tanto, la señora Malbert Can-delario no cumplía con el mínimo de antigüedad requerido por la Carta Circular Núm. 2009-16 de la JREF.
Inconforme, la señora Malbert Candelario solicitó la re-visión del laudo ante el Tribunal de Primera Instancia y *104 sostuvo que la Comisión de Relaciones del Trabajo del Ser-vicio Público erró en la interpretación de la Carta Circular 2009-16 de la JREF.
El 25 de octubre de 2010, el foro primario confirmó el laudo. Determinó que lo propuesto por la señora Malbert Candelario derrotaba el propósito de uniformidad que la JREF quiso impartirle al proceso de cesantías. Además, consideró que la interpretación hecha por la señora Mal-bert Calendario sobre el proceso de cesantías le hubiera inyectado una lentitud no deseada por el legislador, porque no se hubiese podido determinar con certeza a quiénes se iba a cesantear. Apéndice, CC-2011-260, pág. 110.
Ante este cuadro fáctico, la señora Malbert Candelario presentó una petición de certiorari ante el Tribunal de Apelaciones. En él, señaló que el foro primario erró al no resolver que la fecha de corte que estableció la Carta Circular 2009-16 contravenía las disposiciones de la Ley Núm. 7, supra, relativas a la antigüedad y al no concluir que ella estaba exenta de ser cesanteada porque al momento de su despido, su antigüedad era de catorce años, un mes y vein-tisiete días. El Estado, por su parte, argumentó que la ac-tuación de la JREF de decretar una fecha de corte de anti-güedad al implementar el plan de cesantías era un ejercicio válido de delegación de poderes.
El 28 de febrero de 2011 una mayoría del mismo panel del Tribunal de Apelaciones dictó sentencia, mediante la cual revocó el dictamen del foro primario que había confir-mado el laudo de arbitraje que decretó la validez de la ce-santía de la señora Malbert Candelario. El foro apelativo intermedio acogió la contención de la señora Malbert Can-delario y resolvió que la fecha de corte decretada por la JREF creó una ficción que era arbitraria y contraria al principio de antigüedad en el servicio público. Además, in-dicó que la actuación de establecer una fecha de corte para computar la antigüedad de los empleados públicos no se encontraba justificada expresamente en la Ley Núm. 7, su *105 pra, ni emanaba de la facultad delegada por el legislador a la JREF. El Juez Figueroa Cabán disintió nuevamente de la determinación tomada por la mayoría del Panel y se reafirmó en su voto disidente emitido en el caso Milagros Sánchez Collazo v. Departamento de la Vivienda, KLRA-2010-585.
Por estar en desacuerdo con la decisión del Tribunal de Apelaciones, el Estado presentó un recurso de certiorari ante este Foro. Nos solicita que revoquemos la sentencia que emitió el Tribunal de Apelaciones. Sostiene que el le-gislador sí delegó a la JREF la facultad de establecer una fecha de corte para computar la antigüedad de los emplea-dos públicos. El 6 de abril de 2011 emitimos una resolución en auxilio de nuestra jurisdicción en la que paralizamos los efectos de la sentencia del Tribunal de Apelaciones y orde-namos a la señora Malbert Candelario que en treinta días mostrara causa por la cual no se debía expedir el auto de certiorari, y revocar la sentencia del Tribunal de Apelaciones. Además, consolidamos el recurso CC-2011-260 con el recurso CC-2010-1005 por tratarse de la misma controversia.

CC-2011-548

El 14 de abril de 2009, el Sr. Luis Villegas León recibió una certificación de antigüedad en la que se le informó que tenía trece años y siete meses de servicio. En la comunica-ción se le apercibió de que tenía derecho a impugnar la antigüedad certificada ante la oficina de recursos humanos de la agencia en un plazo de treinta días a partir de su notificación. El 26 de junio de 2009, el Departamento de la Vivienda le notificó otra certificación de antigüedad. Se le indicó esta vez que su antigüedad al 17 de abril de 2009 era de trece años, cinco meses y catorce días. De igual forma, se le volvió a explicar su derecho a refutar la anti-güedad certificada. En ninguna de las dos ocasiones el se-ñor Villegas León ejerció su derecho a impugnar la anti-güedad que se le certificó.
*106 Así las cosas, el 25 de septiembre de 2009, el Departa-mento de la Vivienda le anunció al señor Villegas León que, efectivo el 6 de noviembre de 2009, quedaría cesan-teado de su empleo.
El 7 de octubre de 2009, el señor Villegas León presentó por derecho propio una apelación ante CASARH. Señaló que la fecha de efectividad de las cesantías para sus com-pañeros de trabajo era el 8 de enero de 2010 y no el 6 de noviembre de 2009, como se le comunicó a él. Solicitó la corrección de su situación para que la efectividad de su cesantía fuese el mismo día que la de sus compañeros. El 23 de febrero de 2010, el Departamento de la Vivienda con-testó la apelación y solicitó su desestimación.
El 9 de marzo de 2010, el señor Villegas León, por con-ducto de su representación legal, presentó una apelación enmendada. Adujo violaciones del principio de antigüedad y del debido proceso de ley. Además, expuso que estaba exento de la aplicabilidad de la Ley Núm. 7, supra.
Luego de varios trámites, el 22 de julio de 2010 la CA-SARH emitió una resolución. En ella expresó que el señor Villegas León no contaba con el mínimo de antigüedad re-querido para estar exento de la aplicabilidad de las cesan-tías decretadas por la Ley Núm. 7, supra. Asimismo, indicó que el señor Villegas León no impugnó en el término co-rrespondiente la antigüedad certificada, por lo que que-daba vigente su cesantía. El señor Villegas León solicitó la reconsideración de la determinación de la CASARH. No obstante, esta se negó a reconsiderar su dictamen.
El 13 de octubre de 2010, el señor Villegas León pre-sentó un recurso de revisión judicial ante el Tribunal de Apelaciones. Argumentó que la CASARH incidió al avalar la determinación de la agencia de cesantearlo de su puesto. Cimentó su contención en que se debió tomar en cuenta para el cómputo de antigüedad una certificación adicional que presentó junto a un desglose del seguro social. En ellos, alegadamente se demostraba que la antigüedad del *107 señor Villegas León es de más de dieciséis años por lo que quedaría exento del plan de cesantías. Luego de evaluar el recurso, una mayoría de jueces del mismo panel del foro apelativo intermedio revocó el dictamen de CASARH. En específico, resolvió que correspondía computar la antigüe-dad del señor Villegas León hasta el último día de trabajo y no hasta el 17 de abril de 2009, según estableció la Carta Circular 2009-16. Al resolver así, el tribunal concluyó que “[c]ualquier otro cómputo es contrario a la ley y ajeno al criterio de antigüedad, tal como éste se ha concebido”. Apéndice, CC-2011-548, pág. 269. Una vez más, el Juez Figueroa Cabán disintió de la determinación tomada por la mayoría del Panel y se reafirmó en su voto disidente emi-tido en el caso Milagros Sánchez Collazo v. Departamento de la Vivienda, KLRA-2010-585.
Por discrepar del criterio del Tribunal de Apelaciones, el Estado presentó un recurso de certiorari. Aduce, al igual que en los recursos anteriores, que el Tribunal de Apelacio-nes erró al concluir que la actuación de la JREF de esta-blecer una fecha de corte para el cómputo de antigüedad en el servicio público es totalmente impermisible, inoficiosa y contraria a la Ley Núm. 7, supra. El 7 de julio de 2011 emitimos una resolución en auxilio de nuestra jurisdicción en la que paralizamos los efectos de la sentencia del Tribunal de Apelaciones y ordenamos al señor Villegas León que en treinta días mostrara causa por la cual no se debía ex-pedir el auto de certiorari y revocar la sentencia del Tribunal de Apelaciones. Además, consolidamos el recurso CC-2011-548 con los recursos CC-2011-260 y CC-2010-1005 por tratarse de la misma controversia.

CC-2011-698

El 1 de abril de 2009, el Departamento de Transporta-ción y Obras Públicas (D.T.O.P.) notificó al Sr. Pablo Ba-rreto Pérez que su antigüedad total en el servicio público era de ocho años y veinte días. Posteriormente, el 24 de abril de 2009, el señor Barreto Pérez impugnó ante el *108 D.T.O.P. la antigüedad certificada y planteó que en reali-dad comenzó a laborar en esa agencia desde 1987.
El 8 de mayo de 2009, el D.T.O.P. le envió una comuni-cación al señor Barreto Pérez. En ella le indicó que a la fecha de 31 de marzo de 2009, la suma de todos los perío-dos trabajados por él en el servicio público totalizaba trece años y 127 días. Consecuentemente, al 17 de abril de 2009, la antigüedad del señor Pérez Barreto en el servicio pú-blico era de trece años y 144 días. El 25 de septiembre de 2009, el DTOP le notificó al señor Barreto Pérez que, efec-tivo el 6 de noviembre de 2009, sería cesanteado de su puesto en conformidad con la Ley Núm. 7, supra.
Insatisfecho con la determinación del D.T.O.P., el 7 de octubre de 2009, el señor Barreto Pérez presentó por dere-cho propio una apelación ante la CASARH. Allí adujo que al momento de ser efectiva su cesantía, ya contaba con catorce años en el servicio público. Apéndice, pág. 37.
Luego de varios incidentes procesales, mediante resolu-ción emitida el 11 de junio de 2010, la CASARH declaró “no ha lugar” la apelación que presentó el señor Barreto Pérez. Al resolver así, concluyó que este no cumplió con el requi-sito mínimo de antigüedad que estableció la JREF en la Carta Circular 2009-16 para quedar exento de las cesantías. Por consiguiente, la CASARH dejó en vigor la determinación y carta de cesantía cursada al señor Barreto Pérez el 25 de septiembre de 2009.
En desacuerdo, el señor Barreto solicitó reconsideración ante la CASARH. Argumentó que para hacer la determina-ción de antigüedad en el servicio público, la CASARH tenía que considerar el tiempo trabajado hasta la fecha de efec-tividad de la cesantía, es decir, hasta el último día de trabajo. Finalmente, planteó que la antigüedad debía com-putarse desde que comenzó a trabajar en el servicio público hasta el día en que cesaría en sus funciones, es decir, hasta el 6 de noviembre de 2009. Añadió que la CASARH aplicó erróneamente el concepto de antigüedad en el servicio pú- *109 blico al calcular los años de servicios hasta el 17 de abril de 2009 y no hasta la fecha en fue efectiva su cesantía.
Mediante resolución de 21 de julio de 2010, la CASARH denegó la solicitud de reconsideración presentada por el señor Barreto. Inconforme, este presentó un recurso de re-visión administrativa ante el Tribunal de Apelaciones. En él adujo en esencia que la JREF no tenía autoridad ni fuerza legal para establecer un límite de tiempo en cuanto a las personas que serán cesanteadas, por lo que a su en-tender, su cesantía era nula.
El 12 de julio de 2011, una mayoría de jueces del mismo panel del Tribunal de Apelaciones emitió sentencia me-diante la cual revocó el dictamen de CASARH. El tribunal fundamentó su proceder en que la fecha de corte de 17 de abril de 2009, según establecida por la JREF, no surgía expresamente de la Ley Núm. 7, supra, ni de la facultad delegada por el legislador a ese ente administrativo. Por cuarta vez, el juez Figueroa Cabán disintió y se reafirmó en su voto disidente expuesto en el caso Milagros Sánchez Collazo v. Departamento de la Vivienda, KLRA-2010-585.
El 15 de agosto de 2011 el Estado presentó un recurso de certiorari. En síntesis, solicita la revocación de la sen-tencia emitida por el Tribunal de Apelaciones. Alega, al igual que los recursos anteriores, que el Tribunal de Ape-laciones erró al concluir que la actuación de la JREF de establecer una fecha de corte para el cómputo de antigüe-dad en el servicio público es totalmente improcedente y contradictoria a la Ley Núm. 7, supra. El 16 de agosto de 2011, emitimos una Resolución en auxilio de nuestra juris-dicción en la que ordenamos al señor Barreto Pérez que en treinta días mostrara causa por la cual no se debía expedir el auto de certiorari, y revocar la sentencia emitida por el Tribunal de Apelaciones. Además, consolidamos el recurso CC-2011-698 con los recursos CC-2011-548, CC-2011-260 y CC-2010-1005, por tratarse de la misma controversia.
*110 1 — I HH
A.
El 9 de marzo de 2009 se aprobó la Ley Núm. 7-2009, supra. En ella se estableció un plan de emergencia de reducción de gastos por parte del Gobierno de Puerto Rico. Además, mediante el Art. 37 (3 L.P.R.A. sec. 8795) se estableció una segunda fase del plan de reducción de gastos. Esta conllevó cesantías involuntarias para la eliminación de puestos que serían aplicables a todas las agencias de la Rama Ejecutiva del Gobierno de Puerto Rico, sujeto a ciertas excepciones.
El procedimiento para efectuar cesantías se recogió en el Art. 37.04(b) de la Ley Núm. 7 (3 L.P.R.A. sec. 8799(b)), que establece, en parte:

See. 8799 Procedimiento.

El procedimiento para llevar a cabo la Fase II será el dis-puesto en esta sección.
(b) Cesantías.—
(1) En vista del estado de emergencia fiscal, la escasez de recursos fiscales, la gravedad de los problemas que enfrenta-mos y la urgencia requerida para corregir los problemas fisca-les, se exime de agotar medidas tales como reubicación de personal, readiestramiento de empleados, disfrute de vacaciones acumuladas, disfrute de licencia sin sueldo, reducción de jor-nada de trabajo o descensos, previo a instrumentar las cesantías.
(2) Las agencias notificarán la terminación a todo em-pleado que a la fecha de la vigencia de esta ley tenga un nom-bramiento transitorio o irregular, por lo que no será necesario observar, en cuanto a éstos, el criterio de antigüedad. La noti-ficación escrita que a esos efectos las agencias envíen, le aper-cibirá al empleado de su derecho de solicitar revisión de la decisión de la agencia, ante la CASARH, en conformidad a lo dispuesto por la sec. 1468m de este título, y su reglamento. La notificación se hará mediante entrega a la mano o por correo certificado con acuse de recibo a la dirección que obra en los expedientes de la agencia.
*111 (3) Las cesantías de los empleados con nombramiento per-manente o de carrera se efectuarán observando exclusiva-mente el criterio de antigüedad, de modo que sean cesan-teados en primer término aquellos que tengan menor antigüedad.
(4) A los fines de determinar la antigüedad de empleados afectados se considerarán todos los servicios prestados por los empleados afectados en el servicio público, independiente-mente de las disposiciones de los convenios colectivos, regla-mentos, cartas circulares y otros documentos normativos.
Como se aprecia, la Asamblea Legislativa estableció en el primer inciso las razones de política pública que la lle-varon a establecer un plan de cesantías de empleados públicos. De igual forma, los incisos dos al cuatro hacen una distinción entre los empleados con nombramientos irregulares y los empleados con nombramientos permanentes. En cuanto a estos últimos, se estableció que el criterio rector sería la antigüedad, sin tomar en cuenta las disposiciones anteriores contenidas en convenios colec-tivos, reglamentos, cartas circuladas y documentos norma-tivos que pudieran estar en conflicto. Es decir, el legislador quiso establecer un mecanismo uniforme para computar la antigüedad de manera que fuese, en lo posible, una deci-sión objetiva.
Asimismo, el Art. 37.04(b), supra, señala, en lo perti-nente:
(5) Se crea la JREF, la cual estará compuesta por el Presi-dente del BGF, el cual dirigirá la Junta, el Secretario del Tra-bajo, el Secretario del Departamento de Desarrollo Económico y Comercio de Puerto Rico, el Secretario del Departamento de Hacienda, y la Directora Ejecutiva de la OGP. Sus miembros, en el desempeño de esta encomienda, no habrán de recibir remuneración adicional a la que reciben por el desempeño de sus labores en sus agencias o departamentos.
(6) Además de las facultades otorgadas por este capítulo, la JREF tendrá todas las facultades necesarias y convenientes para descargar la encomienda aquí asignada, incluyendo pero sin limitarse a la de realizar o encomendar, a las agencias o departamentos que están a su cargo, que se realicen los estu- *112 dios que sean necesarios; requerir a las agencias la informa-ción necesaria para realizar su encomienda; asesorar al Go-bernador y a las agencias en todo lo relativo a los empleados a ser cesanteados; evaluar, aprobar o rechazar peticiones de em-pleados para reducir la jornada de los puestos que ocupan; llevar a cabo reuniones entre sí y con los jefes de las agencias; y reclutar de forma temporal, mediante destaque, el personal necesario para realizar la encomienda. Su Presidente tendrá la facultad, además, para asignar y/o poner a la disposición de la JREF todo recurso del BGF que sea necesario para descar-gar sus obligaciones bajo este capítulo. La encomienda de la JREF, y su duración finalizará una vez se cumpla el objetivo de la ley.
(7) La JREF habrá de determinar la cantidad global de em-pleados a ser cesanteados, en conformidad con las disposicio-nes del Artículo 2 de esta Ley y en armonía con la necesidad de asegurar la continuidad y calidad de los servicios gubernamentales.
(8) Las agencias identificarán y certificarán a la JREF la antigüedad de cada uno de sus empleados, dentro de un tér-mino no mayor de quince (15) días calendario de iniciada la Fase II.
En el mismo término, las agencias certificarán por escrito a sus empleados afectados, individualmente, su fecha de anti-güedad según surge de sus récords. En el caso de empleados miembros de una unidad apropiada representada por una or-ganización sindical se notificará, además, a dicha organiza-ción sindical. Dicha certificación se notificará a los empleados, y, además, de ser el caso, a la organización sindical, mediante entrega a la mano o por correo certificado con acuse de recibo, a la dirección que obra en los expedientes de las agencias y apercibiéndole del derecho que tiene el empleado a exponer y fundamentar por escrito su versión en cuanto a su fecha de antigüedad. La fecha de notificación será la de su entrega o envío.
El inciso quinto de este artículo creó la JREF y delimitó quiénes son los funcionarios que la componen. Además, se desprende del sexto inciso que la JREF recibió una delegación amplia de poderes de parte de la Asamblea Legislativa para poder instrumentalizar la Fase II de la Ley Núm. 7, supra, que incluyó el proceso de cesantías.
Por otra parte, un análisis del séptimo inciso refleja una preocupación por parte del legislador de que no se afectara *113 la continuidad y calidad de los servicios gubernamentales en la implementation de la Ley Núm. 7, supra. Además, el inciso octavo muestra que la Asamblea Legislativa ordenó a las agencias que certificaran la antigüedad de sus em-pleados para brindarle uniformidad al proceso de cesantías.
Finalmente, el Art. 37.02, supra, dispone:
(9) El empleado, y de ser el caso, éste a través de su organi-zación sindical, tendrá un término no mayor de treinta (30) días calendario, a partir de la fecha de la notificación, para presentar por escrito a la agencia, evidencia documental ofi-cial emitida por la autoridad o entidad gubernamental compe-tente (evidencia documental fehaciente) que refute la antigüe-dad que le ha sido certificada. Para ello utilizará el formulario que para esos fines será provisto por su respectiva agencia, el cual completará y someterá a su propia agencia, con copia de la evidencia documental fehaciente que refute la fecha de an-tigüedad notificada por la agencia.
(10) En la eventualidad de que el empleado afectado no refute o no presente, dentro del término aquí dispuesto, eviden-cia documental fehaciente que sostenga su posición, la anti-güedad a ser utilizada será aquella que le fue notificada por la agencia. Dicha antigüedad será concluyente para todo propó-sito relacionado con este capítulo.
(11) En la eventualidad de que el empleado afectado pre-sente, dentro del término aquí dispuesto, evidencia documen-tal fehaciente que controvierta la antigüedad que le ha sido notificada, la agencia no tomará determinación final sobre la antigüedad sin antes darle la oportunidad de tener una vista previa.
(12) La agencia notificará al empleado su determinación final que sobre la antigüedad tome, y, además, de ser el caso, a la organización sindical, en un término no mayor de treinta (30) días calendario a partir de la fecha en que concluya la vista informal a la cual se refiere la cláusula (11) de este in-ciso, apercibiéndole de su derecho de solicitar revisión de dicha determinación, conforme a lo dispuesto a esos fines en las cláusulas (13) y (14) de este inciso. Dicha notificación se hará a los empleados y, además, de ser el caso, a la organización sindical, mediante entrega a la mano o por correo certificado con acuse de recibo, a la dirección que obra en los expedientes de las agencias. La fecha de notificación será la de su entrega *114 o envío. No obstante, la presentación del recurso de revisión no habrá de paralizar las cesantías; Disponiéndose, no obs-tante, que en el caso que el empleado prevalezca, se le resti-tuirá a su puesto, efectivo a la fecha de su cesantía.
(13) El empleado afectado podrá solicitar revisión de la de-terminación final tomada por la agencia, solamente en cuanto a su antigüedad ante la CASARH, en conformidad a lo dis-puesto por la sec. 1468m de este título, y su reglamento.
(14) Aquellos empleados que sean miembros de una unidad apropiada, afiliados o no a una organización sindical, podrán revisar la determinación tomada final por la agencia, sola-mente en cuanto a su antigüedad, mediante una petición que a esos efectos presenten a los árbitros de la Comisión, creada al amparo de las sees. 1451 et seq. de este título, en un tér-mino no mayor de treinta (30) días calendario del recibo de la notificación de la agencia.
(15) La agencia notificará las cesantías con al menos treinta (30) días calendario de anticipación a la fecha de su efectivi-dad, mediante comunicación escrita dirigida al empleado y, además, de ser el caso, a la organización sindical, indicando la fecha de efectividad de la misma. La notificación se realizará conforme a la cláusula (12) de este inciso.
(16) Las cesantías a efectuarse conforme a esta Fase II se-rán llevadas a cabo de forma escalonada, a partir del 1 de julio del 2009 y durante todo el año fiscal 2009-2010. La JREF establecerá el orden en que se llevarán a cabo las cesantías y al determinar este orden tomará en cuenta las medidas nece-sarias para asegurar que las agencias afectadas puedan con-tinuar operando apropiadamente luego de las cesantías.
Los acápites nueve al quince describen a grandes rasgos el proceso de certificación de antigüedad de los empleados públicos. Asimismo, disponen del proceso de impugnación de antigüedad en caso de que el empleado no estuviere de acuerdo con ella. Resalta de estos incisos que si el em-pleado no refuta la antigüedad certificada, esta será con-cluyente para todo propósito relacionado con este capítulo, lo que incluye el proceso de cesantías. En otras palabras, el legislador le ordenó a la JREF que utilizara la antigüedad certificada para encaminar el plan de cesantías.
De igual manera, el undécimo inciso le permitió al em-pleado que no estuviese de acuerdo con la antigüedad cer- *115 tificada que presentara una revisión de esa decisión, que incluía el derecho a una vista previa. De otra parte, el in-ciso duodécimo le impuso a las agencias el deber de notifi-car en un término no mayor de treinta días la determina-ción final sobre la antigüedad, en caso de que fuera impugnada. Sin embargo, se dejó claro que la revisión de la certificación de antigüedad no paralizaría la cesantía. El inciso decimotercero le confirió a la CASARH la facultad de recibir apelaciones referentes exclusivamente al cálculo de antigüedad.
El inciso decimoquinto obligó a las agencias a que noti-ficaran al empleado, con treinta días de anticipación, la decisión de cesantearlo de su empleo. Por su parte, el in-ciso decimosexto reglamentó lo relativo al tiempo en que se efectuarían los despidos. En específico, se señaló el año fiscal 2009-2010 para implementar el plan de cesantías.
El 2 de noviembre de 2009, la JREF emitió la Carta Circular Núm. 2009-16, sobre el proceso para la determinación de los empleados públicos afectados por el plan de cesantías dispuesto en el Capítulo II de la Ley Núm. 7, supra. Además, explicaba que en conformidad con los Arts. 37.04(b)(3) y (4) se notificarían las determinaciones en torno al corte de antigüedad para determinar cuáles empleados serían afectados por el plan de cesantías. La JREF comenzó por establecer que la Ley Núm. 7, supra, le otorgó todas las facultades necesarias y convenientes para hacer cumplir los objetivos de las medidas de reducción de gastos del Capítulo III de la ley. A renglón seguido, añadió:
(1) Para asegurar que el cómputo de la antigüedad se reali-zara de manera uniforme para todos los empleados públicos, la JREF estableció una fecha de corte de antigüedad del 17 de abril de 2009. Es decir, la antigüedad para todos los emplea-dos públicos se determinó usando los años en el servicio pú-blico acumulados hasta dicha fecha.
(2) En la primera ronda de cesantías, efectiva el 10 de julio de 2009, fueron afectados los empleados públicos que a la fe- *116 cha de corte de 17 de abril de 2009 contaban con una antigüe-dad en el servicio público igual o menor a nueve (9) meses y diecisiete (17) días contados.
(3) En la segunda ronda de cesantías, efectiva el 6 de no-viembre de 2009 o la fecha posterior que le sea notificada al empleado, según haya sido autorizado por la JREF, fueron afectados empleados públicos que a la fecha de corte de 17 de abril de 2009 contaban con una antigüedad en el servicio pú-blico igual o menor a trece (13) años, seis (6) meses y cero (0) días. Carta Circular Núm. 2009-16 de la JREF, pág. 2.
En otras palabras, la JREF, en aras de brindar unifor-midad al proceso y evitar cualquier señalamiento de discri-men por ideas políticas u otros, estableció una fecha obje-tiva y uniforme para el cómputo de antigüedad.
En Domínguez Castro et al. v. E.L.A. I, 178 D.P.R. 1 (2010), certiorari denegado, Dominguez Castro v. Puerto Rico, 131 S.Ct. 152 (2010), este Tribunal declaró la consti-tucionalidad del proceso de cesantías establecido en la Ley Núm. 7, supra. Así, no encontramos violación de la cláu-sula constitucional del debido proceso de ley en su ver-tiente sustantiva. En particular, aplicamos a la Ley Núm. 7 un escrutinio racional y concluimos que se encontraba presente un interés legítimo por parte del Estado y la me-dida adelantaba ese ñn. Id., págs. 61-62.
En lo referente a la vertiente procesal del debido pro-ceso de ley, concluimos que “el proceso establecido por el Capítulo III de la Ley Núm. 7 es uno que sobrepasa el mínimo requerido por la normativa jurisprudencial”. Domínguez Castro et al. v. E.L.A. I, supra, pág. 65. Funda-mentamos esa posición en que la legislación en controver-sia disponía de un organismo competente e imparcial que podía atender los reclamos y aquilatar la evidencia que los empleados pudieran presentar, en caso de que decidieran recurrir finalmente de la decisión de la agencia. Id.
Finalmente, determinamos que hubo una debida dele-gación de poder a la Rama Ejecutiva, por lo que no se violó el principio axiomático de separación de poderes. Domínguez Castro et al. v. E.L.A. I, supra, págs. 97-99. Cimenta- *117 mos esa conclusión en que la legislación en controversia establecía claramente las facultades que se le delegaban a la Rama Ejecutiva y estas venían acompañadas de unas guías específicas. Id.
Más tarde, en Negrón Matos et al. v. E.L.A., 179 D.P.R. 217 (2010), tuvimos la oportunidad de auscultar si ciertos empleados públicos estaban exentos del plan de cesantías por razón del puesto que ocupaban. Luego de hacer un ejer-cicio de hermenéutica, concluimos que varios empleados de la Administración de Instituciones Juveniles (AIJ) no esta-ban exentos del plan de cesantías dispuesto en la Ley Núm. 7, supra. Fundamentamos nuestro proceder en que el texto de la Ley Núm. 7 era claro al establecer que “sólo los oficiales juveniles que labora [ban] en la AIJ est[aban] excluidos expresamente” del plan de cesantías. íd., pág. 230.
Mientras tanto, en Báez Rodríguez et al. v. E.L.A., 179 D.P.R. 231 (2010), resolvimos que los coordinadores de pruebas de detección de sustancias controladas y otras pruebas especiales del Instituto de Ciencias Forenses sí estaban exentos del plan de cesantías. Alcanzamos esa de-cisión al colegir que los “empleados realizaban] labores técnicas y de peritaje para el Instituto de Ciencias Foren-ses”, por lo que estaban exentos según el Art. 37.02 de la Ley Núm. 7 (3 L.P.R.A. sec. 8797).
Posteriormente resolvimos Bomberos Unidos v. Cuerpo Bomberos et al., 180 D.P.R. 723, (2011). Allí, reafirmamos los pronunciamientos que emitimos en Domínguez Castro. Id., págs. 13 a 19. De igual manera, ampliamos el alcance de lo resuelto en Domínguez Castro sobre la Ley Núm. 7, supra. Así, al contrastar la Ley Núm. 7 con la Sec. 17 del Art. III de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, indicamos que el título de la primera era lo suficiente-mente descriptivo con relación al asunto que regulaba y la forma en que había de regularlo. Id., pág. 766. Añadimos que una mera lectura de la Ley Núm. 7 revelaba que exis- *118 tía una relación directa entre el título del referido estatuto, el asunto que regulaba y los métodos escogidos para regularlo. Id.
Además, resolvimos que no era necesario que las cartas de cesantías fuesen notificadas simultáneamente a todos los empleados afectados. Al concluir así, razonamos que no se intuía que la intención del legislador fuera esa, por lo que debíamos abstenernos “de incorporar al Art. 37.04(b), requisitos de notificación adicionales”. Bomberos Unidos v. Cuerpo Bomberos et al., supra, pág. 769. De igual forma, nos negamos a concluir que la consecuencia de la notifica-ción defectuosa de una carta de cesantía fuese la nulidad de esta última. Por el contrario, razonamos que la cesantía era válida, pero la parte perjudicada podía ejercer su dere-cho a revisar la decisión administrativa ante el foro perti-nente, sin sujeción a los términos que establecía la ley mientras no incurriera en incuria. Id., pág. 771.
Finalmente, colegimos que el hecho de que ciertas car-tas de cesantías fueran firmadas por un funcionario pú-blico interino no era óbice para concluir que las correspon-dientes cesantías eran nulas. En otras palabras, razonamos que el funcionario público interino que firmó las cartas de cesantías tenía plena capacidad jurídica para hacerlo. íd., pág. 773.
Más adelante, este Tribunal tuvo la oportunidad de resolver Sánchez Díaz et al. v. E.L.A., 181 D.P.R. 810 (2011). En ese caso, teníamos que resolver si ciertos empleados estaban exentos del plan de cesantías contemplado en la Ley Núm. 7, supra. Luego de un análisis minucioso de la letra de la Ley Núm. 7, supra, y de su historial legislativo, dictaminamos que los empleados del Registro de la Propie-dad estaban exentos del plan de cesantías. Id., págs. 823-824.
*119 B
Desde 1928 el Tribunal Supremo de Estados Unidos es-tableció claramente que, para que exista una delegación constitucional de poderes a las agencias administrativas, es necesario que el Poder Legislativo establezca un princi-pio inteligible. J.W Hampton, Jr., & Co v. United States, 276 U.S. 394, 409 (1928). De igual forma, ese Foro señaló en Loving v. United States, 517 U.S. 748, 778 (1996), que el principio inteligible implica “que el Congreso no debe dele-gar el poder de hacer leyes, y por lo tanto, no debe delegar más autoridad que la necesaria para implementarlas”. (Traducción nuestra.) En virtud de este principio inteligi-ble, las agencias administrativas canalizan la autoridad y discreción que la ley les confiere. Véase P.L. Strauss, The Place of Agencies in Goverment: Separation of Powers and the Fourth Branch, 84 Colum. L. Rev. 573 (1984).
En la jurisprudencia del Tribunal Supremo federal han sido pocas las ocasiones en las que la delegación de poderes a las agencias administrativas ha fracasado. Esa situación ocurrió en Panama Refining Co. v. Ryan, 293 U.S. 388 (1935), y en A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 498 (1935). Sin embargo, es preciso señalar que estos casos se suscitaron durante la época de la im-plantación de la política del “Nuevo Trato” por parte de la administración del presidente Franklin Delano Roosevelt. D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, pág. 37. Así pues, el contexto histórico de estos dos casos fue sumamente excepcional. Posteriormente, la trayectoria jurisprudencial del máximo foro federal de-muestra que la balanza se ha inclinado a permitir la dele-gación de poderes siempre que exista un principio inteligi-ble que guíe la discreción administrativa. Véanse: Whitman v. American Trucking Assns., Inc., 531 U.S. 457 *120 (2001); Loving v. United States, supra; Touby v. United States, 500 U.S. 160 (1991); Skinner v. Mid-America Pipeline Co., 490 U.S. 212 (1989); Mistretta v. United States, 488 U.S. 361 (1989); 1 Pierce’s Administrative Law Treatise 5th 108-109 (2010).
Sabemos que en los últimos años se ha desarrollado un debate interesante sobre las bondades y los defectos de la doctrina de la delegación de poderes. Por un lado, existen académicos que abogan por la extinción de la doctrina por-que entienden que esta no tiene fundamento alguno en el texto constitucional estadounidense. E. Posner y A. Vermeule, Interring the Nondelegation Doctrine, 69 U. Chi. L. Rev. 1721 (2002). Por otro lado, hay expertos en la materia que piensan que la doctrina tiene un fundamento constitu-cional sólido, aunque no están de acuerdo con la formula-ción del principio de inteligibilidad. G. Lawson, Discretion as Delegation: The “Proper” Understanding of the Non Delegation Doctrine, 73 George Wash. L. Rev 235, 236 (2005). Véanse, además: J. Mashaw, Prodelegation: Why Administrators Should Make Political Decisions, 1 J.L. Econ. & Org. 81 (1985); C. Buys y W. Isasi, An “Authoritative” Statement of Administrative Action: A Useful Political Invention or a Violation of the Separation of Powers Doctrine?, 7 N.Y.U. J. of Leg. & Pub. Pol’y 73 (2003).
Más allá del debate académico, la realidad demuestra que la función de las agencias “se ha transformado de una entidad pasiva que rendía ciertos servicios, a una muy ac-tiva que realiza multiplicidad de actividades”. M. & B.S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319, 325 (1987). Por esa razón, desde la década de los cuarenta del siglo pasado nos hemos expresado a favor de la delegación de poderes. Luce & Co., v. Junta Salario Mínimo, 62 D.P.R. 452, 464 (1943).
Posteriormente, este Tribunal tuvo la oportunidad de analizar el tema de la delegación de poderes en Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670 *121 (1953). Allí, luego de reafirmar el precedente de Luce & Co., v. Junta Salario Mínimo, supra, indicamos que
... el mundo moderno se caracteriza por la gran complejidad en las relaciones sociales y económicas de las personas, con-juntamente con la progresiva supervisión gubernativa sobre la conducta individual, y ello implica que la legislatura está im-posibilitada de anticipar legislativamente, en forma detallada, minuciosa o específica, la multiplicidad de situaciones que puedan surgir de esas relaciones complejas, siendo suficiente el que la ley en cuestión señale o establezca normas amplias y generales que sirvan de guía o dirección a entidades adminis-trativas expertas, para que éstas, con su experiencia y conoci-mientos especiales, apliquen esas normas concretamente a los hechos que puedan surgir y ultimen los detalles que imple-menten la política general legislativa. Tales normas no nece-sitan expresarse con precisión o exactitud matemática y pue-den ser tan generales que justifiquen más de una conclusión y, a menos que la norma no se exprese o sea tan sumamente vaga que como cuestión de hecho no exista, la presunción de constitucionalidad que conlleva toda ley basta para sostener su validez. (Citas omitidas.) Hilton Hotels v. Junta Salario Mínimo, supra, págs. 692-693. Véase, además, Fernández Quiñones, op. eit., págs. 48-49.
Subsiguientemente, este Foro se expresó acerca de la delegación de poderes en López v. Junta de Planificación, 80 D.P.R. 646 (1958). Por su importancia, conviene repetir las palabras que mencionamos entonces sobre la doctrina de la delegación de poderes:
Sin duda, la Legislatura no puede delegar poderes arbitra-rios e ilimitados a los organismos administrativos. La ley debe contener siempre normas adecuadas que sirvan de guía y que limiten el uso del poder delegado, ya sea éste el de promulgar reglamentos con fuerza de ley (rule-making) o el de resolver controversias específicas a la luz de hechos concretos (iadjudication). Pero no es indispensable que la ley fije normas detalladas y minuciosas. Dadas las condiciones sociales y eco-nómicas modernas, (1) la Legislatura no puede considerar los detalles de los programas de gobierno: su función esencial es la de establecer pautas generales y si tratase de intervenir en los detalles no podría desempeñarla a cabalidad; (2) con fre-cuencia es preciso desarrollar programas que exigen la super-visión constante, el conocimiento técnico y la experiencia es- *122 pecializada de organismos administrativos; y (3) siempre resulta esencial para la realización efectiva de esos programas conceder un amplio margen de discreción a dichos organismos. Por eso, la delegación de poderes puede hacerse constitucional-mente a base de normas amplias y generales. (Citas omitidas y énfasis nuestro.) íd., pág. 661.
En otras palabras, por motivo de la complejidad del mandato otorgado a las agencias administrativas, “ha sido necesario que la Rama Legislativa les delegue una gran discreción en el desarrollo y ejecución de la política pública”. M. & B. S., Inc. v. Depto. de Agricultura, supra, pág. 326.
De esta forma, al igual que el Tribunal Supremo federal, hemos permitido la delegación de poderes a las agencias administrativas, siempre que se establezcan nor-mas adecuadas o un principio inteligible que encauce las determinaciones de las agencias administrativas. Domínguez Castro et al. v. E.L.A. I, supra; Perfect Cleaning v. Cardiovascular, 162 D.P.R. 745 (2004); González v. E.L.A., 167 D.P.R. 400, 410 (2006); Gutiérrez v. A.A.A., 167 D.P.R. 130, 143 (2006); Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105 (2002); Rodríguez v. Bco. Gub. de Fom. P.R., 151 D.P.R. 383, 400 (2000); Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992); M. & B. S., Inc. v. Depto. de Agricultura, supra.
Claro está, la determinación de si la legislación en cues-tión contiene un principio inteligible o normas adecuadas va a depender de un análisis caso a caso en el que se aus-culte la delegación conferida y los criterios establecidos por el legislador. Whitman v. American Trucking Assns., Inc., supra; D. Summerville, The Nondelegation Doctrine after Whitman v. American Trucking Associations: Constitutional Precedent Breathes a Sigh of Relief, 18 Ga. St. U.L. Rev. 627, 664 esc. 234 (2001).
*123 HH H-1 l-H
En el caso que nos ocupa, el Tribunal de Apelaciones decidió en cuatro ocasiones diferentes que a la JREF no se le delegó el poder de establecer una fecha de corte para computar la antigüedad de los empleados públicos. No obs-tante, un análisis integrado del texto de la Ley Núm. 7, además de nuestra jurisprudencia en materia de delega-ción de poderes, nos convence de que el foro apelativo in-termedio erró al resolver así.
En primera instancia, del Art. 37.04(b)(6), supra, surge una delegación expresa a la JREF para tomar todas las acciones convenientes y necesarias para el cumplimiento del plan de cesantías. Es decir, a la JREF se le delegó es-tatutariamente la facultad de administrar el plan de ce-santías mediante la identificación de aquellos empleados que iban a ser afectados. Véase el Art. 37.04(b)(5),(6),(7) y (8), supra. De igual forma, a la JREF se le delegó la obli-gación de determinar el orden en que se llevarían a cabo las cesantías. Véase el Art. 37.04(b)(16), supra.
Como se mencionó anteriormente, este Tribunal ha in-terpretado y declarado la constitucionalidad de la Ley Núm. 7 en varias ocasiones. En este caso, fue al amparo de ese mandato legislativo que la JREF emitió la Carta Circular Núm. 2009-16, mediante la cual estableció una fecha de corte para computar la antigüedad de los empleados públicos.
Nos resulta espinoso concebir un procedimiento distinto al implementado por la JREF para llevar a cabo las cesantías. La realidad demostró que al establecer un cóm-puto uniforme de antigüedad, se evitó cualquier aplicación arbitraria del plan de cesantías. Es decir, la fecha uniforme de cómputo de antigüedad le brindó al proceso de cesantías un clima de pureza y transparencia. Así las cosas, los em-pleados públicos podían contar con la certeza de que lo *124 único que se iba a tomar en cuenta para determinar quién era cesanteado era la antigüedad en la misma fecha sin distinciones artificiales que variaran de agencia en agencia o de empleado a empleado. Precisamente, en lo que se re-fiere a la delegación de la autoridad para implementar el plan de cesantías, el criterio de la antigüedad es el princi-pio inteligible que estableció la Asamblea Legislativa para guiar la acción de la JREF. Como mencionamos en Domín-guez Castro, supra, págs. 94 — 95, la JREF "tendrá todas las facultades necesarias y convenientes encaminadas al cum-plimiento de la Ley Núm. 7, supra, pero en materia de cesantías, siempre estará obligada a respetar el criterio de antigüedad”.
De igual manera, y debido a la importancia del criterio de antigüedad, la Ley Núm. 7, supra, le permitió a todos los empleados impugnar la certificación de antigüedad que emitía la agencia. Art. 37.04(b)(8), supra. Sin embargo, también dejó diáfanamente claro que la antigüedad notifi-cada sería concluyente para todo propósito relacionado con el plan de cesantías. Art. 37.04(b)(10), supra. No existe controversia en torno a que la JREF utilizó el criterio de antigüedad como principio inteligible. No obstante, el Tribunal de Apelaciones concluyó que como la Ley Núm. 7 no dispuso una fecha de corte para computar antigüedad, la JREF no podía establecerla. Eso no es compatible con los objetivos de la ley ni con los poderes amplios delegados a la JREF.
Como muy bien señala la jurisprudencia federal y local, la delegación de poderes puede hacerse constitucional-mente a base de normas amplias y generales, tal como ocu-rrió en el caso que nos ocupa. Es que la mejor manera en que se podía respetar el criterio de antigüedad establecido por la Asamblea Legislativa era señalando una fecha uni-forme y objetiva de corte para determinar la antigüedad. Es decir, era poco menos que imposible que la Legislatura hubiese podido prever al dedillo todo el proceso de *125 cesantías. Eso la llevó a legislar normas amplias y genera-les sobre el procedimiento de cesantías y, a su vez, a dele-gar a la JREF la facultad de instrumentalizarlo.
IV
Al 17 de abril de 2009, la antigüedad certificada de la señora Sánchez Collazo era de doce años, once meses y diecinueve días. De igual forma, la antigüedad certificada de la señora Malbert Candelario a la misma fecha era de trece años, dos meses y veintidós días. Asimismo, la anti-güedad certificada del señor Villegas León al 17 de abril de 2009 era de trece años, cinco meses y catorce días. Por último, la antigüedad certificada del señor Barreto Pérez a la misma fecha era de trece años y ciento cuarenta y cuatro días.
Como se aprecia, ninguno de estos cumplía al 17 de abril de 2009 con el requisito de trece años y seis meses de antigüedad para quedar exento del plan de cesantías, se-gún se intimó en la Carta Circular 2009-16. Así pues, no estaban exentos del plan de cesantías y podían ser despe-didos al amparo de la Ley Núm. 7, supra.
Como se discutió, la Carta Circular Núm. 2009-16 de la JREF es un ejercicio válido de autoridad por parte de la JREF que garantizó un trato equitativo y objetivo a todos los empleados públicos afectados por la Ley Núm. 7, supra. Procede confirmar la actuación administrativa.
V
Por los fundamentos expuestos, se expiden los autos de “certiorari”y se revocan las sentencias del Tribunal de Ape-laciones en los recursos CC-2010-1005, CC-2011-260, CC-2011-548 y CC-2011-698. En específico, en los recursos CC-2010-1005, CC-2011-548 y 2011-698 sostenemos la decisión *126 de la CASARH de archivar los casos. En el recurso CC-2011-260 prevalece el laudo de arbitraje.

Se dictará Sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta disintió con una opinión escrita, a la que se unieron el Juez Presidente Se-ñor Hernández Denton y la Juez Asociada Señora Rodrí-guez Rodríguez. El Juez Asociado Señor Estrella Martínez no interviene.